# EXHIBIT B

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| Disconnected Electrically[1] | plain and ordinary meaning | **"physically disconnected"**<br><br>Intrinsic Support:<br><br>"Both Hirano et al. and Anderson et al. do not disclose this feature, and generally do not disclose means for conserving power, as applicants understand the references. The device in Hirano is connected to an automobile battery, which is a significant source of power. Therefore, Hirano does not suggest, by any means, that a power saving feature for the device connected to the automobile battery would be required or even desirable. Further, while the device in Anderson et al. generally discloses a timer, it does not suggest any method for saving power in the device, let alone disconnecting the battery from power intensive sections of the lock in order to conserve power." ('082 patent, Amendment, June. 28, 1996, p. 8, emphasis added.)<br><br>"The RF decode circuitry 62 will only draw battery power for 1/100 of the time, and thus the battery will last 100 times longer than if the battery were permanently connected to the RF decode circuitry 62." ('082 patent, 11-15.)<br><br>Extrinsic Support:<br><br>Disconnect: "to open a circuit by a separating a [sic] point where parts of it are joined together." (S. |

---

[1]   '082 Patent, Claim 21

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | M. Kaplan, "disconnect," Wiley Electrical and Electronics Engineering Dictionary, John Wiley & Sonics, Inc. Hoboken, NJ, 2004, p. 200; SAR005944-45, |
| An Enable Output Signal[2] | plain and ordinary meaning | **"a signal sent from one circuit or portion of a circuit to another circuit or portion of a circuit, which activates, turns-on, or makes available for service, the receiving circuit or portion of a circuit"**<br><br>Extrinsic Support:<br><br>Testimony of Dr. Stephen Heppe discussing how a person having skill in the art at the time of the invention would understand the term "enable output signal" as it appears in the '758 patent. |
| Interrupt Inputs[3] | plain and ordinary meaning | **"interrupt input pin(s) connected to a keypad"**<br><br>Intrinsic Support<br><br>"The following example will illustrate the multiplexing with respect to the keypad 11. Normally, in sleep mode, pins R1, R2, R3 and R4 are waiting for an input. When, for example, the keypad "3" is input, pin R1, which keypad "3" is connected to, is triggered signifying to the microprocessor 14 that an interrupt has occurred. The microprocessor 14 then executes an interrupt in |

---

[2]  '758 Patent, Claim 14
[3]  '576 Patent, Claim 7

2705/027533-0003
7948999.3 a01/09/15

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | the software program and changes one of the four pins (R1, R2, R3 and R4) into an output whereby a logic high is sent to the R1 pin. When a keypad is pressed, it acts as a short circuit; thus, when the microprocessor 14 sends out a logic high, it then senses pins C1, C2 and C3 to determine exactly which keypad in the row has been pressed." ('576 patent, 6:43-55.)<br><br><br><br>FIG. 3<br><br>('576 patent, Fig. 3.)<br><br>Extrinsic Support:<br><br>Interrupt: "A signal to a CPU that enables it to address multiple tasks in an orderly manner. Interrupts are asynchronous events which divert the attention of the processor, and can be generated by hardware or software components.  there is an established priority hierarchy in case more than one interrupt arrives simultaneously." (S. M. Kaplan, "interrupt," Wiley Electrical and Electronics Engineering Dictionary, John Wiley & Sonics, Inc. Hoboken, NJ, 2004, p. 388; SAR005944-45, |

O.S. Security v. Sargent, et al.
Case No. 8:14-cv-00318-AG-DFM

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | SAR005965.) |
| | | Interrupt: "(1) (A) (software) The suspension of a process to handle an event external to the process… (2) A signal for a processor to suspend one process and begin another…" (IEEE 100: The Authoritative Dictionary of IEEE Standard Terms, Seventh Edition, New York, NY, 2000, p. 583, SAR006034.) |
| | | Input: "[T]hat which is applied or otherwise entered into a system, so as to obtain an output or other result." (S. M. Kaplan, "input," Wiley Electrical and Electronics Engineering Dictionary, John Wiley & Sonics, Inc. Hoboken, NJ, 2004, p. 374; SAR005944-45, SAR005964.) |
| | | Testimony of Dr. Stephen Heppe discussing how a person having skill in the art at the time of the invention would understand the term "interrupt inputs." |
| Means for Decoding[4] | plain and ordinary meaning | **"a pair of transistors tuned to a frequency of 320 MHz and a digital output circuit"** |
| | | Pursuant to S.P.R. 3.2, Defendants believe that this claim element is governed by 35 U.S.C. § 112(6)/(f). This claim is indefinite at least because the '082 patent fails to disclose structure, material or acts for performing the claimed function. This claim is therefore rendered invalid under at least § |

---

[4]   '082 Patent, Claim 21

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | 112. To the extent this claim is even capable of construction, Defendants construe it as indicated herein.<br><br>Intrinsic Support:<br><br>"The input electronics 60 contains the RF wake-up 61 and the RF decode circuitry 62 … The RF wake-up circuit 61 then sends a wake-up enable signal to the RF decode circuit 62. The RF decode circuit 62, via the antenna 63, translates it into a series of bits and then sends the digital bitstream signal to the processing electronics 65 to determine if the digital bitstream signal contains the access code." ('082 patent, 7:44-56.)<br><br>"When the RF wake-up circuit 61 senses, via the antenna 66, that there is a signal tuned to the low frequency carrier wave, the RF wake-up circuit 61 sends a wake-up enable signal to the RF decode circuit 62. The RF decode circuit 62 then accepts the RF bitstream access code signal, and translates it into a series of bits for the microprocessor 14." ('082 patent, 7:61-67.)<br><br>"The RF decode circuitry 62 consists of two bipolar junction transistors Q1, Q2, two operational Amplifiers, OP1 and OP2, and resistors, capacitors, inductors and diodes connected to these components. The RF input signal is referred to as an on-off keying of high frequency bursts for set time frames. In the present invention, the frequency is set at 320 MHz. A burst of frequency is detected |

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | by the Q1 and Q2 transistors with their circuits tuned to the correct frequency (320 MHz in this example). The RF decode circuitry 62 then senses the data bitstream sent in the form of digital 1 data signal and digital 0 dead band of no frequency. Thus, a train of on and off frequency pulses would be received by the antenna, conditioned and amplified by Q1 and Q2 of the RF decode circuitry 62, and converted to bitstream 1 and 0 digital signals by the two operational amplifier signal conditioners OP1 and OP2." ('082 patent, 8:16-31.)  FIG. 6 ('082 patent, Fig. 6.) |

2705/027533-0003
7948999.3 a01/09/15

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | <br><br>**FIG. 7**<br><br>('082 patent, Fig. 7.)<br><br>Extrinsic Support:<br><br>Decoding: "the actions a decoder performs." (S. M. Kaplan, "decoding," Wiley Electrical and Electronics Engineering Dictionary, John Wiley & Sonics, Inc.  Hoboken, NJ, 2004, p. 174; SAR005944-45, SAR005949.)<br><br>Decoder: "A circuit, device, or program which converts that which has been encoded back into its original form."  (S. M. Kaplan, "decoder," Wiley Electrical and Electronics Engineering Dictionary, John Wiley & Sonics, Inc.  Hoboken, NJ, 2004, p. 174; SAR005944-45, SAR005949.)<br><br>Testimony of Dr. Stephen Heppe that the '082 patent fails to provide structure and is internally |

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | inconsistent with respect to the phrase "means for decoding." |
| Means for Sensing an Input Signal[5] | plain and ordinary meaning | Pursuant to S.P.R. 3.2, Defendants believe that this claim element is governed by 35 U.S.C. § 112(6)/(f). This claim is indefinite at least because the '082 patent fails to disclose structure, material or acts for performing the claimed function. This claim is therefore rendered invalid under at least § 112. To the extent this claim is even capable of construction, Defendants construe it as indicated herein.<br><br>Intrinsic:<br>"The input electronics 60 contains the RF wake-up 61 and the RF decode circuitry 62 … The RF wake-up circuit 61 then sends a wake-up enable signal to the RF decode circuit 62. The RF decode circuit 62, via the antenna 63, translates it into a series of bits and then sends the digital bitstream signal to the processing electronics 65 to determine if the digital bitstream signal contains the access code." ('082 patent, 7:44-56.)<br><br>"When the RF wake-up circuit 61 senses, via the antenna 66, that there is a signal tuned to the low frequency carrier wave, the RF wake-up circuit 61 sends a wake-up enable signal to the RF decode circuit 62. The RF decode circuit 62 then accepts the RF bitstream access code signal, and translates |

---

[5]   '082 Patent, Claim 21

2705/027533-0003
7948999.3 a01/09/15

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | it into a series of bits for the microprocessor 14." ('082 patent, 7:61-67.)<br><br>"The RF decode circuitry 62 consists of two bipolar junction transistors Q1, Q2, two operational Amplifiers, OP1 and OP2, and resistors, capacitors, inductors and diodes connected to these components. The RF input signal is referred to as an on-off keying of high frequency bursts for set time frames. In the present invention, the frequency is set at 320 MHz. A burst of frequency is detected by the Q1 and Q2 transistors with their circuits tuned to the correct frequency (320 MHz in this example). The RF decode circuitry 62 then senses the data bitstream sent in the form of digital 1 data signal and digital 0 dead band of no frequency. Thus, a train of on and off frequency pulses would be received by the antenna, conditioned and amplified by Q1 and Q2 of the RF decode circuitry 62, and converted to bitstream 1 and 0 digital signals by the two operational amplifier signal conditioners OP1 and OP2." ('082 patent, 8:16-31.)<br><br><br><br>FIG. 6 |

2705/027533-0003
7948999.3 a01/09/15

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | ('082 patent, Fig. 6.)<br><br>"FIG. 7 shows the schematic of the input electronics 60 wherein the RF wake-up circuit 61 periodically wakes up from a low power sleep mode and senses if there is an incoming RF signal. The RF wake-up circuit 61 consists of two low-power CMOS inverter gates, INV1 and INV2, a CMOS transistor Q3, resistors, and a capacitor. The two inverters INV1 and INV2 are configured in an oscillator configuration in a ratio of 1 to 100. In other words, the oscillator will switch on for 1/100 of a second." ('082 patent, 8:1-8.)<br><br><br><br>**FIG. 7**<br><br>('082 patent, Fig. 7.)<br><br><u>Extrinsic Support</u>:<br><br>Sensing: "to be or become aware of; to |

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | comprehend; understand; to detect automatically, as by sensors." (V. Neufeldt, "sensing," Webster's New World College Dictionary, Third Edition, New York, NY, 1997, p. 1222; SAR005957-59.) <br><br> Sensing Circuit: "A circuit whose function is to detect the occurrence of some event at its input terminals."   (IEEE 100: The Authoritative Dictionary of IEEE Standard Terms, "sensing circuit", Seventh Edition, New York, NY, 2000, p. 1025; SAR005954-56.) <br><br> Testimony of Dr. Stephen Heppe that the '082 patent fails to provide structure and is internally inconsistent with respect to the phrase "means for sensing an input signal." |
| Period of Time[6] | plain and ordinary meaning | **"fixed and predetermined/specified period of time"** <br><br> <u>Intrinsic Support</u>: <br><br> "If the clear key on the keypad is entered at any time in the operation of the device, the microprocessor 14 waits 5 seconds before going back into sleep mode and waiting for the next keypad entry." ('576 patent, 8:64-67.) <br><br> "An additional feature of the system is a requirement that a digit must be entered within a specified time. Otherwise, the microprocessor 14 |

---

[6]   '576 Patent, Claim 15

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | will send an error message 47 if there is a five second lapse between keypad entries." ('576 patent, 9:7-10.)<br><br>Extrinsic Support:<br><br>Period: "An interval of time during which one or more phenomena, conditions, or events occur. 2. The interval of time that elapses between two consecutive events of a periodically repeated phenomenon." (S. M. Kaplan, "period," Wiley Electrical and Electronics Engineering Dictionary, John Wiley & Sonics, Inc.  Hoboken, NJ, 2004, p. 563; SAR005944-45, SAR005966.)<br><br>Defendants reserve their right to present expert testimony regarding how this term would be interpreted by one of skill in the art. |
| Periodically[7] | plain and ordinary meaning | **"at set intervals or time periods"**<br><br>Intrinsic Support:<br><br>"However, the operation of the Henderson device is substantially different from the claimed invention because Henderson requires physical activity (i.e., pressing a button) on the part of a user. In contrast, the claims-at-issue are generally directed to periodically enabling and disabling a circuit, irregardless of the actual presence of a device to activate a lock." ('907 patent, file history, p. 11, |

---

[7]  '758 Patent, Claim 72; '725 Patent, Claim 1; '907 Patent, Claim 15

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | Sept. 25, 2006.) |
| | | "FIG. 7 shows the schematic of the input electronics 60 wherein the RF wake-up circuit 61 periodically wakes up from a low power sleep mode and senses if there is an incoming RF signal. The RF wake-up circuit 61 consists of two low-power CMOS inverter gates, INV1 and INV2, a CMOS transistor Q3, resistors, and a capacitor. The two inverters INV1 and INV2 are configured in an oscillator configuration in a ratio of 1 to 100. In other words, the oscillator will switch on for 1/100 of a second. At this time, the CMOS transistor Q3 will turn on and supply the battery power to the RF decode circuitry 62. The RF decode circuitry 62 will only draw battery power for 1/100 of the time, and thus the battery will last 100 times longer than if the battery were permanently connected to the RF decode circuitry 62." ('725 patent, 10:42-55; '758 patent, 10:42-55; '907 patent, 10:42-55.) |
| Permanent Access Code[8] | plain and ordinary meaning | **"permanent code entered through a communication port during the manufacturing process that is not temporary and is incapable of being changed."**<br><br>Intrinsic Support:<br><br>"In particular, claim 42 is directed to a method of writing a permanent access code into the non-volatile memory of a lock control circuit during the |

---

[8]   '576 Patent, Claim 16

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | manufacturing process. The key point of the claimed invention as recited in claim 42 is that the non-volatile memory does not have a permanent access code stored therein until such a code is entered through a communication port and written into the memory.  In sharp contrast, although Vanderschel mentions key enrollment, which may involve the entering of new key parameters, it requires the lock memory to already have an existing access code before new keys can be enrolled." ('576 patent, Amendment, January 22, 2004, p. 12.) <br><br> "An alternate mode of using the PROG key is to disable the permanent access code in the EPROM 22 temporarily when a new access code is entered into RAM 23. After the PROG key is hit, the microprocessor 14 inputs the next five numbers 34, 35, 36, 37 and 38. The comparator 57, within the microprocessor 14, compares 1the input number with the permanent access code 39 from EPROM 22. If the two numbers match, the microprocessor 14 inputs a second access code 41, 42, 43, 44, 45. In this alternative, when the microprocessor 14 stores in RAM 23 the new access code 46, it disables access to the permanent access code in RAM 23. Therefore, until the battery 18 is turned off, the only access code available is the new access code stored in RAM 23." ('576 patent, 8:34-47.) <br><br> "Applicants intend to point out that the permanent code cannot be reprogrammed via the keypad." |

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | ('100 patent, Interview Summary, December 20, 2006, p. 2.)<br><br>"However, as stated in paragraphs 60 and 62 of the Application as published, the EEPROM 22 within the device can contain a permanent access code that, at best, can only be temporarily disabled. Moreover, Figure 5 of the Application depicts that programming in a new code at 46 will only add this code to the memory and not replace the code entered and compared at 39. Thus, the permanent access code is non-reprogrammable by the user." ('615 patent, file history, Applicant Arguments/Remarks Made in Amendment, May 27, 2005, p. 16.)<br><br>"Thus, the lock boxes do not have a manufacturer-inserted permanent access code that is installed during an assembling process. In this regard, the word "permanent" in "permanent code" indicates how the code is used, i.e., it resides in the device and cannot be deleted and replaced by another code as long as the device is functional, rather than suggesting any physical properties of the memory holding the code." ('547 patent, file history, Amendment After Final, October 25, 2001, p. 7.)<br><br>Extrinsic Support:<br><br>Permanent: "lasting or continuing for a very long time or forever: not temporary or changing." (http://www.merriam-webster.com/dictionary/permanent, SAR006024- |

2705/027533-0003
7948999.3 a01/09/15

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | 26.) |
| | | Access Code: "A code required to gain access to something, such as a computer terminal, a network, a secure areas, or a particular form of telephone service." (S. M. Kaplan, "access code," Wiley Electrical and Electronics Engineering Dictionary, John Wiley & Sonics, Inc.  Hoboken, NJ, 2004, p. 6; SAR005944-45, SAR005960.) |
| | | Defendants reserve their right to present expert testimony regarding how this term would be interpreted by one of skill in the art. |
| Portable Remote Device[9] | plain and ordinary meaning | **"an active hand-held remote control device"** |
| | | Intrinsic Support: |
| | | "Hirano, in the same field of endeavor relative to automobiles, discloses a transmitter unit 100 (equivalent to claim 22's "control station for transmitting an electromagnetic signal")…" ('082 patent, Office Action, January 26, 1996, p. 7.) |
| | | "The input electronics 60 accepts the code sent from the central control. The method of transmitting the code may take several forms including an electromagnetic signal (such as a RF signal sent by an RF serial bitstream transmitter, or an infrared signal) or a data line (telephone line)." ('082 patent, 7:34-39; '725 patent, 10:9-13; '907 |

---

[9]  '907 Patent, Claim 11

O.S. Security v. Sargent, et al.
Case No. 8:14-cv-00318-AG-DFM

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | patent, 10:9-13; '405 patent, 12:30-34.)<br><br>"When an RF signal is used, the central station transmits a signal via a transmit antenna 63 (transducer that sends radiated electromagnetic fields into space). The radiated waves containing the RF signal contains the bitstream access code which is sent to the input electronics 60." ('082 patent, 7:40-44; '725 patent, 10:14-18; '907 patent, 10:14-18; '405 patent, 12:35-39.)<br><br>"Typically, the operator of the control unit 59 which contains the RF transmitter will enable the RF transmitter with a transmit button 58 to send an RF on-off keying pulse for approximately one second. The RF signal being transmitted is a digital bitstream conditioned to an RF on-off keying signal which takes about two milliseconds in which to transmit one complete signal. The control unit 59 then repeats the signal over and over for the duration that the RF transmitter is enabled." ('082 patent, 8:32-40; '725 patent, 11:5-13; '907 patent, 11:5-13; '405 patent, 13:26-34.)<br><br>"FIG. 6 highlights another aspect of the invention, the remote operation of the electronic access code device using a battery. The device can be integrated with other electronic devices forming a system of electronic locks. At the center of the system is a central control station whereby each of the devices may be accessed." ('082 patent, 6:63-67; '725 patent, 725 patent, 9:36-41; '907 patent, 36-41; |

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | '405 patent, 11:57-62.)<br><br><br><br>**FIG. 6**<br>('082 patent, Fig. 6.)<br><br>"The input electronics 60 accepts the code sent from the central control. The method of transmitting the code may take several forms including an electromagnetic signal (such as a RF signal sent by an RF serial bitstream transmitter, or an infrared signal) or a data line (telephone line)." ('082 patent, 7:34-39.)<br><br>"FIG. 14 shows another embodiment of the voice operated access control device which includes a central control station 220 and one or more remote devices in the arrangement shown generally in FIG. 6. The central control station 220 may be formed as a hand-held remote control unit which can be conveniently carried and handled by the user. For illustration purposes, two remote devices 212A, 212B are shown, each of which has its own unique identification code. The identification codes are stored in the memories 216A, 216B of the |

2705/027533-0003
7948999.3 a01/09/15

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | microprocessors 228A, 228B of the respective remote devices. The central control station 220 has a voice recognition IC 200 coupled to a microphone 202 for receiving and recognizing a voice command." ('725 patent, 15:41-53; '907 patent, 15:41-53.) |
| | | "FIG. 14 shows another embodiment of the voice operated access control device which includes a central control station 1220 and one or more remote devices in the arrangement shown generally in FIG. 6. The central control station 1220 may be formed as a hand-held remote control unit which can be conveniently carried and handled by the user." ('405 patent, 17:62-67.) |
| | | "This voice-activated remote access control system finds many applications in different settings. For example, as illustrated in FIG. 14, the remote access control device 212A is connected to a file cabinet 240 and a desk 242 in an office for locking and unlocking the cabinet drawers and desk drawers. By way of example, when the user gives the voice command "lock desk," the central control station 220 receives the command through the microphone 202. If the speaker's voice is recognized, the central control station 220 sends out a bitstream signal to cause the remote unit 212A to operate a lock mechanism 241 in the desk 240 to lock the desk drawers." ('725 patent, 16:17-27; '907 patent, 16:17-27.) |

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | "This voice-activated remote access control system finds many applications in different settings. For example, as illustrated in FIG. 14, the remote access control device 1212A is connected to a file cabinet 1240 and a desk 1242 in an office for locking and unlocking the cabinet drawers and desk drawers. By way of example, when the user gives the voice command "lock desk," the central control station 1220 receives the command through the microphone 1202. If the speaker's voice is recognized, the central control station 1220 sends out a bitstream signal to cause the remote unit 1212A to operate a lock mechanism 1241 in the desk 1240 to lock the desk drawers. As another example illustrated in FIG. 14, the remote device 1212B is used to control a motor 1243 in a tool chest 1244 to lock and unlock the doors and drawers of the tool chest." ('405 patent, 18:40-54.) |
| Portion[10] | plain and ordinary meaning | **"a part of a larger amount"**<br><br>Extrinsic Support:<br><br>Portion: "a part of a larger amount, area, etc." (*See, e.g.*, http://www.merriam-webster.com/dictionary/portion, SAR006036-38.)<br><br>Testimony of Dr. Stephen Heppe discussing how a person having skill in the art at the time of the invention would understand the term "portion" as it |

---

[10]  '758 Patent, Claim 14

O.S. Security v. Sargent, et al.
Case No. 8:14-cv-00318-AG-DFM

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | appears in the '758 patent. |
| Remote Station[11] | plain and ordinary meaning | **"a remote unit capable of detecting a signal transmitted by an active control device adapted to generate and transmit a coded signal"**<br><br>Intrinsic Support:<br><br>"It is yet still a further related object of the invention to develop an electronic access control device which can be operated remotely using only a battery as a source of power." ('082 patent, 2:20-22.)<br><br>"The remote electronic access code device is divided into two parts: the input electronics 60 and the processing electronics 64. The processing electronics 64 contains a microprocessor, an access code input and output, an acoustic output, light emitting diodes (LED), a voltage regulator, and an electromechanical driver output. Thus, the remote device is similar to the microprocessor in processing the input access code, as shown in FIG. 1, except the access code may be input in several ways." ('082 patent, 7:16-24.)<br><br>Extrinsic Support:<br><br>Defendants reserve their right to present expert testimony regarding how this term would be interpreted by one of skill in the art. |

---

[11]   '082 Patent, Claim 21

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| Separate[12] | plain and ordinary meaning | **"remote, and not joined or connected to/"**<br><br>Intrinsic Support:<br><br>"An electronic lock utilizes two microprocessors remote from each other for enhanced security" ('907 patent, Abstract.)<br><br>"In accordance with an important aspect of the present invention, there is provided an electronic access control device that provides substantially enhanced security and reduced vulnerability to tampering by using two microprocessors. FIG. 9 shows generally the functional block diagram of such a device. As illustrated in FIG. 9, the control device has a first microprocessor 90 and a second microprocessor 92. The first microprocessor 90 is connected to an input device 94 for receiving a user-entered control signal signifying a demand to operate an electronic device 98. The second microprocessor 92 controls a driver circuit 96 for energizing the electrical device 98 to effect a desired operation. The electrical device 98 may be, for example, a solenoid, motor, relay, or the like for opening a lock, or, as will be described in greater detail below, the ignition relay of a motorcycle. The first microprocessor 90 may be positioned close to the input device 94, while the second microprocessor 92 may be located close to the electrical device 98 and is preferably well shielded |

---

[12]   '907 Patent, Claim 46; '405 Patent, Claim 1

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | from external access. The two microprocessors are connected by a two-way communication link 100." ('907 patent, 12:51-13:3.)<br><br><br><br>"FIGS. 10A and 10B illustrate an application of the dual-microprocessor configuration in an electronic lock. In this embodiment, the control circuit has two halves connected by a cable. The first half, which is shown in FIG. 10A, contains a first microprocessor 110. The second half, shown in FIG. 10B, contains a second microprocessor 112. Pin 11 (PA7) of the first microprocessor 110 is connected to pin 18 (PA0) of the second microprocessor 112 via the cable 115 and the mating connectors 114 and 116 to establish a two-way serial communication channel between the two microprocessors." ('907 patent, 13:50-59.)<br><br>"Once a user-entered control signal is received, the first microprocessor 90 determines whether the demand to operate the electrical device 98 should be transmitted to the second microprocessor 92. If the demand is to be transmitted, the first |

2705/027533-0003
7948999.3 a01/09/15

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | microprocessor 90 sends a special communication code to the second microprocessor 92 via the communication link 100. The second microprocessor 92 compares the transmitted communication code with a preset communication code stored in a non-volatile memory 102. If the transmitted code matches the stored code, the second microprocessor 92 activates the driver circuit 96 to energize the electrical device 98." ('907 patent, 13:9-20.)<br><br>"In the embodiment shown in FIG. 12, the speech recognition IC 200 has a microphone 202 connected thereto for receiving voice commands from a user. In this embodiment, the combination of the voice recognition IC 200 and the microphone 202 serves generally the function of the input device 94 of FIG. 9. An optional keypad 11 may also be used for entering an access code. After receiving a voice command, the speech recognition IC 200 analyzes the voice command to recognize the command and the voice pattern of the speaker. If the voice recognition IC 200 recognizes the voice pattern to be that of an authorized user, it transmits a command code corresponding to the command received to the first microprocessor 190. The first microprocessor 190 transmits an operation code corresponding to the command and a communication code stored in its memory to the second microprocessor 192 via a bidirectional communication link 180. The second microprocessor 192 compares the transmitted |

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | communication code with a preset communication code which is stored in a non-volatile memory 194. If the two communication codes match, the second microprocessor 192 activates the driver circuit 196 to energize an electrical device 198 to carry out the operation specified by the operation code." ('907 patent, 15:6-27.) Extrinsic Support: Separate: "not joined, connected, or combined: placed or kept apart." (http://www.merriam-webster.com/dictionary/separate?show=0&t=14133 94738, SAR006027-33.) Defendants reserve their right to present expert testimony regarding how this term would be interpreted by one of skill in the art. |
| Shielded from external access[13] | plain and ordinary meaning | **"more physically and electronically shielded from external access than the other processor"** Intrinsic Support: "In accordance with the object of the invention to reduce the vulnerability to tampering, the present invention provides an electronic access control device which has two microprocessors. The first microprocessor is preferably disposed close to the user interface such as a keypad or an electronic key reader. The second microprocessor is preferably |

---

[13] '100 Patent, Claim 1

**O.S. Security v. Sargent, et al.**
**Case No. 8:14-cv-00318-AG-DFM**

| Claim term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| | | disposed close to the lock mechanism and substantially shielded from external access." ('100 patent, 3:64 - 4:4.)<br><br>"It will be appreciated that this dual-microprocessor configuration significantly reduces the vulnerability of the device to tampering. Even if a tamperer may gain access to the first microprocessor, it is intended that the second microprocessor is well shielded and therefore cannot be reached easily. Since the second microprocessor responses only to a correct communication code, the tamperer will not be able to use the trick of "hot-wiring" to activate the driver circuit 96." ('100 patent, 13:46-54.)<br><br>"The first microprocessor 90 may be positioned close to the input device 94, while the second microprocessor 92 may be located close to the electrical device 98 and is preferably well shielded from external access." ('100 patent, 13:23-27.)<br><br>Extrinsic Support:<br><br>Shielded: "Protected by, or otherwise incorporating a shield or shielding." (S. M. Kaplan, "shielded," Wiley Electrical and Electronics Engineering Dictionary, John Wiley & Sonics, Inc. Hoboken, NJ, 2004, p. 703; SAR005944-45, SAR005973.) |